SIMPSON v. CHERRY.

1. LIFE ESTATE—PERIOD OF SURVIVORSHIP—LIMITATION OF ESTATES.—A testatrix provided as follows in her will:

    1st, I give bequeath & devise unto my three sons, William, Isaiah Jameson & John Hemphill Cherry an equal share & alike all my plantation of Land situate, * * * being all the Lands whereon I now Live & subject to the following conditions Viz that they the said three pay all my just debts, 2dly, that when any one of them dies his part to go to the survivors, and if two dies then their part, falls to the survivor of the three above named & should they all die then to my unmarried daughters living at the time in common, and as each girl marries or dies then her part to her unmarried Sisters or sister living at the time, and when the last girl marries or dies then to be equally divided among all the Surviving Brothers & Sisters or to the Heirs of their body if dead to them & their Heirs forever.

    *Held*, that the estate was limited to the three sons for their joint lives and the life of the survivor, the period of survivorship being the death of the life tenants and not the death of the testatrix; and therefore, Isaiah and John having died before testatrix, the estate at her death vested in William for life, and at his death, none of his sisters being then unmarried, the ulterior limitation took effect.

2. LIMITATION OF ESTATES.—The ulterior limitation was to the brothers and sisters who survived William, the children of a deceased brother or sister taking the share which their parent would have taken if alive; and therefore the children of William took a brother's share.

3. CASES CRITICISED.—*Anderson* v. *Smoot*, Speer Eq., 312, approved and followed.

Before WALLACE, J., Chester, June, 1890.

This was an action by Eliza Jane Simpson against William J. Cherry and others. The Circuit decree, omitting its statement of the pleadings and facts, was as follows:

As matter of law, I hold that by the terms of the will of Deborah Cherry her three sons, William, Isaiah Jamison, and John Hemphill, in case they had all survived testatrix and paid her debts, would have taken the land with equal interest for their joint lives, with the right of survivorship among them; that the devise to Isaiah Jamison and John Hemphill lapsed by reason of their deaths in the life-time of testatrix; that Wm. Cherry's right to the whole of said land for his life, and, as survivor of his two brothers, vested at the death of testatrix; that at the death of

Wm. Cherry in 1889, there were no unmarried daughters or daughter of testatrix to take under the devise to unmarried daughters, and that the land thereupon passed to those entitled to take when all single daughters had married or died—that is, to the surviving brothers and sisters of Wm. Cherry, the life-tenant.

At that time the four sons of testatrix and one daughter, Margaret, were dead, and Eliza Jane Simpson, Sarah Wylie, and Eleanor C. Boyle, or Boyles, were the only surviving children. As the land at that time went over to the surviving brothers and sisters of Wm. Cherry, "or to the heirs of their body if dead," it is clear that the widow and two sons of Wm. Cherry can take nothing under the will.   See *Roundtree* v. *Roundtree*, 26 S. C., 464, *et seq.*   The word "or" between the words, "the surviving brothers and sisters," and "to the heirs of their body if dead," is in the alternative.   My attention has not been called to any other words in the will that enable me to construe "or" as "and" in order to carry out the purposes of the testatrix.   See *Shands* v. *Rogers*, 7 Rich. Eq., 425; *Massey* v. *Davenport*, 23 S. C., 455. I hold, therefore, that the surviving sisters, Eliza Jane Simpson, Sarah Wylie, and Eleanor C. Boyle, or Boyles, are exclusively entitled to the land at the death of Wm. Cherry, to be equally divided among them.

*Messrs. Hart & Hart*, for appellants, *cited* 1 Jarm. Wills (4th Am. edit.), 724; 3 *Ibid.*, 571, 572, 584, 589, and notes; 1 DeSaus., 324; 2 McCord Ch., 214; 12 Rich. Eq., 114; 1 Brev., 414; 1 Jarm. Wills, 606; 12 Rich. Eq., 11; Prec. Chan., 78; Speer Eq., 319; 30 S. C., 184; 7 Sim., 204.

*Mr. Giles J. Patterson*, contra, *cited* 3 Jarm. Wills, 572–589, 606; 1 Brev., 414; 12 Rich. Eq., 114; 7 *Id.*, 107; 10 *Id.*, 392; Speer Eq., 320; 26 S. C., 464; 3 Jarm. Wills, 611, 615.

February 19, 1891.   The opinion of the court was delivered by

MR. JUSTICE MCIVER.   Some time in October, 1869, one Deborah Cherry departed this life, having first duly made and executed her last will and testament, which was admitted to probate on the 1st of November, 1869, and on the same day letters

testamentary were issued to her son, Wm. Cherry, who, as her executor, on the 6th of January, 1870, made his final return as to the disposition of the personal estate of testatrix, showing that the whole thereof, after deducting the expenses of administration, was equally divided amongst the four daughters of the testatrix, as provided by the fourth clause of her will.

The controversy in this case arises under the first clause of the will, which reads as follows: "I give, bequeath, and devise unto my three sons, William, Isaiah Jameson, and John Hemphill Cherry an equal share and alike all my plantation of land situate, * * * subject to the following conditions, viz., that they, the said three, pay all my just debts. Secondly, that when any one of them dies, his part to go to the survivors, and if two dies, then their part falls to the survivor of the three above named; and should they all die, then to my unmarried daughters living at the time in common, and as each girl marries or dies, then her part to her unmarried sisters or sister living at the time, and when the last girl marries or dies, then to be equally divided among all the surviving brothers and sisters, or to the heirs of their body if dead, to them and their heirs forever."

The facts are all conceded, and are as follows: The two sons, Isaiah Jameson and John Hemphill, named in the will, died unmarried and intestate before the testatrix, who at her death left surviving her the following named children, viz., William Cherry, Sarah Wylie, Margaret Smith, Eliza Jane Simpson, and Eleanor C., who subsequently intermarried with M. C. Boyle, and a grandchild, Ella H. Cherry, a daughter of Elijah Cherry, a predeceased son of testatrix, who subsequently intermarried with George Schorb. Margaret Smith, one of the children above named, and her husband are both dead, leaving no lawful issue. Wm. Cherry went into possession of the land in question on the death of the testatrix, and so continued until his death, which occurred in 1889, and his widow, Ann, and his sons, William J. and James M. Cherry, still retain the possession of the same. At the time of the death of the testatrix, all of her daughters were married except Eleanor C., and she intermarried with Boyle before the death of Wm. Cherry.

This action was commenced by the plaintiff on the 10th of

February, 1890, against her two sisters, Sarah Wylie and Eleanor C. Boyle, Ann Cherry, the widow, and Wm. J. Cherry and J. M. Cherry, the sons of the deceased brother, Wm. Cherry, and Ella H. Schorb, the daughter of her brother, Elijah, who predeceased the testatrix, asking that the land mentioned in the first clause of the will be partitioned between herself and her two sisters, Mrs. Wylie and Mrs. Boyle. The defendants, Ann Cherry and her two sons, Wm. J. and James M., answered, claiming that under a proper construction of the will of Deborah Cherry, the land in question vested in fee simple in Wm. Cherry, and they, as his only heirs at law, were entitled to have the same partitioned amongst themselves to the exclusion of all of the other parties. The other defendants filed no answers.

The Circuit Judge held "that by the terms of the will of Deborah Cherry, her three sons, William, Isaiah Jameson, and John Hemphill, in case they had all survived testatrix and paid her debts, would have taken the land with equal interest for their joint lives, with the right of survivorship among them; that the devise to Isaiah Jameson and John Hemphill lapsed by reason of their deaths in the life-time of testatrix; that Wm. Cherry's right to the whole of said land for his life, and as survivor of his two brothers, vested at the death of the testatrix; that at the death of Wm. Cherry in 1889, there were no unmarried daughter or daughters of testatrix to take under the devise to unmarried daughters, and that the land thereupon passed to those entitled to take when all single daughters had married or died—that is, to the surviving brothers and sisters of Wm. Cherry, the life tenant." And as the plaintiff and her two sisters were then the only surviving children of the testatrix, they alone were entitled to take; the words, "or to the heirs of their body if dead," not being sufficient to let in the two sons of Wm. Cherry; and he therefore rendered judgment that the land be partitioned between the plaintiff and the defendants, Sarah Wylie and Eleanor C. Boyle, in equal shares.

From this judgment the defendants, Wm. J. Cherry, James M. Cherry, and Ann Cherry, alone appeal upon the several grounds set out in the record, which need not be repeated here, as the appeal really raises but two questions: 1st. As to the nature of

the estate which Wm. Cherry took under the first clause of the will, and which, upon his death, as the appellants claim, descended to them as his heirs at law. 2nd. Whether his two sons, as heirs of his body, in the event it should be held that the estate of Wm. Cherry terminated with his life, are entitled to come in under the ulterior limitation in the will.

It is very obvious from the language of the will, the first clause of which has been copied above precisely as it appears in the "Case," that the testatrix, in drawing her will, was *inops consilii,* and has expressed her wishes in homely, inartistic phrase; but, nevertheless, it seems to us that she has made her intention sufficiently plain to enable us to carry it into effect. The scheme of the testatrix manifestly was, that her land should go to her three sons with the right of survivorship amongst them, and, in the absence of any other provision, we suppose the last surviving son would have taken an estate in fee simple, notwithstanding the absence of the technical word usually employed to create such an estate. But the will does not stop there. On the contrary, it proceeds to declare the disposition that shall be made of the land after the death of all three of the sons; and this clearly limits the estate given to the three sons to an estate for their joint lives, and the life of the survivor of them.

It is contended, however, by appellants that the right of survivorship amongst the three sons must be determined by reference to the time of the death of the testatrix, and not to any other event, and that the true construction of the will is, that the testatrix intended to give the land to all three of her sons if they all survived her; and if not, then to such of them as did survive her, and that the ulterior limitations over were not to take effect unless all three of her sons died during her life-time. This view would, it seems to us, entirely defeat the intention of the testatrix, and cannot, therefore, be adopted. She manifestly intended to give each of her three sons an equal interest in the land, but it was upon the condition "that they, *the said three,* pay all my just debts," and as this condition could not be performed until after her death, it is clear that the testatrix, in making this provision for her three sons, did not contemplate the death of either of them during her own life-time. With this idea in her mind, she

then proceeds to make provision for an event which is inevitable to all men—the death of one or all of her sons—and commences the provision with these words: " *When* any one of them dies, his part to go to the survivors," &c.   The use of the word "when" is significant, and may apply to a death either before or after the death of the testatrix, and should, therefore, be construed as signifying a death *at any time*, as there is nothing to limit its signification to any particular time.

The testatrix having thus given the land to her three sons upon a condition, binding on all of them, which could not well be performed until after her death, and manifestly contemplating the inevitable event of death, proceeds to declare her will as to the disposition of the land when that inevitable event shall occur to one or all of them—"*when any one of them* dies, his part to go to the survivors, and if two dies, then their part falls to the survivors of the three above named, and should they all die, then to my unmarried daughters," &c.   It is quite true, as argued by counsel, that the words "if" and "should," as used in the foregoing quotation from the will, being words of contingency applied to an event—death—which was certain to occur, would tend to show that, in the absence of any other period indicated, the testatrix had in her mind the contingency of the death of one or all of her sons during her own life-time, and there would be much force in this view if there was nothing else in the will to indicate a contrary intention.   But it will be observed that the testatrix, after having given the land to the three sons upon a condition not to be performed in her life time, thereby showing that her mind was contemplating a condition of things after her death, immediately proceeds to declare what shall be the disposition of the property "*when any one*" of her three sons dies—that his part shall go to the survivors, which plainly implies that the part of the one dying shall go to those who may survive the event upon which such part shall go over, and the manifest object of the language which follows, in which the words relied on by the counsel for appellant are found, was to declare specifically what had already been declared by the more general terms—"when any one of them dies"—that upon the death of each son his part should go to the survivors or survivor, and that upon the death of the last survivor

the property should go over to the unmarried daughters living at the time, "and when the last girl marries or dies, then to be equally divided among all the surviving brothers and sisters, or to the heirs of their body if dead, to them and their heirs forever." Looking alone to the language used by the testatrix, it seems to us that this is the true construction of the will; but we think it is also supported by the rules deducible from decided cases.

We do not think that there can be a doubt that the intention was that the son who died first should take an estate for his life only with remainder to his surviving brothers, for no other construction can be placed upon the language: "When any one of them dies his part to go to the survivors." If, therefore, all three of the sons had survived the testatrix, we do not see how the conclusion could be escaped that when the first of the three died, his part should go to the other two as his survivors, and as it was manifestly the intention to put the three sons precisely upon the same footing, we see no reason to doubt that the same rule would apply to each of the three when they died. Now, the rule seems to be well settled, that when a testator gives property to one for life, with remainder to his surviving children, the death of the life tenant, and not that of the testator, is the period which must be looked to in order to determine who are to take. *Evans v. Godbold*, 6 Rich. Eq., 26; *Schoppert v. Gillam, Ibid.*, 83; *Roundtree v. Roundtree*, 26 S. C., 450. It seems to us, therefore, that there was no error on the part of the Circuit Judge in holding that Wm. Cherry took an estate for life only, and that upon his death the land in controversy passed under the ulterior limitation, there being no unmarried daughters at the time capable of taking under the intervening limitation in their favor.

The only remaining inquiry is, who are the persons entitled to take under the ulterior limitation; and upon this point we cannot agree with his honor, the Circuit Judge. The language in which this limitation is expressed is somewhat obscure and peculiar, but the insurmountable objection to the view adopted by the Circuit Judge is, that it wholly ignores some of the important words used by the testatrix in defining the beneficiaries under this limitation. In the events which have oc-

curred, the property in question is "to be equally divided among all the surviving brothers and sisters or to the heirs of their body if dead, to them and their heirs forever." By confining the benefits of this provision to the three surviving sisters (all the brothers being dead) the words, "or to the heirs of their body if dead," are entirely ignored in contravention of the well settled rule that in construing a will force and effect must, if practicable, be given to all the words used by the testatrix. The construction adopted below would have been precisely the same if these words had not been found in the will, and the clause had read "to be equally divided among all the surviving brothers and sisters, to them and their heirs forever."

But the testatrix has used the words in question, and it must be assumed that she employed them for some purpose. It could not have been for the purpose of fixing the character of the estates which the surviving brothers and sisters were to take as a fee conditional, for that would have been wholly inconsistent with the idea expressed by the words immediately following—"to them and their heirs forever"—fixing the character of the estate as a fee simple. We must therefore look for some other purpose, and the only one that we can conceive of is that the testatrix intended by these words to substitute the heirs of the body of any deceased brother or sister in the place of such deceased. The testatrix having designated the class which were to take by the terms "surviving brothers and sisters," was manifestly not satisfied with such limited designation, and therefore added the words "or to the heirs of their body, if dead," for the very purpose of enlarging the class so as to include the heirs of the body of any brother or sister who may have died.

This view is directly sustained by the case of *Anderson* v. *Smoot*, Speer Eq., 312. In that case the testator gave certain property to his wife for life, and directed that the same at her death should return to his estate and "be equally divided among my surviving children, or the heirs of their bodies, share and share alike." The controversy was between such of the children as survived the wife, and the heirs of the bodies of two of the children who predeceased the wife; and it was held that the heirs of the bodies of the two children who

had predeceased the life tenant were entitled to share in the remainder. The language used by Dunkin, Ch., in delivering the opinion of the court, is so appropriate to the present case as to warrant a liberal quotation. That distinguished Chancellor, after adverting to the fact that the will in that case (as well as in this) was manifestly drawn by one who was not an expert, and therefore its language should receive the ordinary interpretation, and, if possible, every word should be given its full force and effect, proceeds to say: "It is insisted * * that, by the proper construction of the will, the survivorship must be held to relate to the death of the tenant for life, and the defendants were therefore entitled in remainder to the exclusion of complainants. This construction can only benefit the defendants by disregarding the latter branch of the sentence. Conceding that the survivorship refers to the period of the termination of the life estate, what is meant by the alternative provision, 'or to the heirs of their bodies'? Certainly not the heirs of the bodies of the *surviving* children. Again, if only the surviving children could take, and all had died, pending the life estate, leaving children, these children could take nothing as purchasers under their grandfather's will, because the parents did not survive the tenant for life. The court would not adopt such a construction except from necessity. As the terms 'or the heirs of their bodies' cannot sensibly be construed to mean heirs of the bodies of the children then *in esse*, it is proper to inquire whether they are susceptible of a different interpretation without doing violence to established rules. * * * It seems to the court that this provision was intended for such of the children as might survive the tenant for life, and for the heirs of the bodies (or children) of those who might not have so survived. This gives full effect to the term 'or' used in its natural sense. When a distribution is directed among his surviving children or the heirs of their bodies, it is equivalent to saying, among my children who may survive, or the heirs of the bodies of those who may not survive; for no children could at that time have heirs, except those who had not survived. To give any effect to the alternative expression, and to the latter part of the sentence, it must be construed to refer to the heirs of the bodies of the children who had predeceased the tenant for life."

It is impossible to distinguish the case now under consideration from that just cited, and it is therefore conclusive. It seems to us that there was error on the part of the Circuit Judge in excluding the children, heirs of the body, of Wm. Cherry, one of the deceased brothers; and in this respect the judgment below must be modified.

The judgment of this court is, that the judgment of the Circuit Court, as herein modified, be affirmed, and that the case be remanded to that court for such further proceedings as may be necessary to carry out the views herein announced.